IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEI LYN SANCHES,<br><br>    Plaintiff(s),<br><br>  vs.<br><br>CITY OF CRESCENT CITY, et al.,<br><br>    Defendant(s).<br>_____/ | No. C 08-1395 MEJ<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

Before the Court is Defendants City of Crescent City ("City" or "Crescent City") and Dennis Burns, Eli Naffah, Mike Scavuzzo, and Douglas Plack's (collectively, the "individual Defendants") Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted (Dkt. #33). Plaintiff Joei Lyn Sanches has filed an Opposition (Dkt. #35), and Defendants have filed a Reply (Dkt. #36). After consideration of the parties' papers, relevant legal authority, and good cause appearing, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion for the reasons set forth below.

## II. BACKGROUND

Plaintiff filed this action against Defendants on March 11, 2008. (Dkt. #1.) On May 14, 2008, Plaintiff filed her First Amended Complaint For Violation of Civil Rights [42 U.S.C. § 1983]; False Claims Acts Discrimination/Retaliation [18 U.S.C. § 3730] and Supplemental State Law

Claims [18 U.S.C. § 1367] ("FAC").  On July 29, 2008, Defendants filed the instant Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking to dismiss Plaintiff's FAC in its entirety.

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  FRCP 8(a), which states that a plaintiff's pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," provides the standard for judging whether such a cognizable claim exists. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  This standard is a liberal one that does not require the plaintiff to set forth all the factual details of his claim; rather, all that the standard requires is that the plaintiff give defendant fair notice of the claim and the grounds for making that claim.  *Leatherman v. Tarrant County Narcotics Intell & Coord Unit*, 507 U.S. 163, 168 (1993) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Under FRCP 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *see also Conley*, 355 U.S. at 45-46.  All material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff.  *In re Silicon Graphics, Inc. Sec Litig.*, 183 F.3d 970, 983 (9th Cir. 1999).

If the court dismisses the complaint, it must then decide whether to grant leave to amend.  The court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### IV.  DISCUSSION

**A.  Plaintiff's Allegations**

The material allegations of Plaintiff's FAC, taken as true and construed in the light most favorable to Plaintiff, are as follows.

The actions and events that form the basis for Plaintiff's FAC occurred during the period of

April through December 2007.  During this time, Defendant Dennis Burns was the Mayor of Crescent City, Defendant Eli Naffah was the City Manager, Defendant Mike Scavuzzo was an elected member of the Crescent City Council, and Defendant Douglas Plack was the City's Chief of Police.  (FAC ¶¶ 8-11.)

On April 4, 2007, the City hired Plaintiff as its Director of Finance pursuant to a one-year contract.  (FAC ¶ 7.)  On June 6, 2007, Plaintiff, acting as a private citizen, filed a complaint with the United States Internal Revenue Service ("IRS") relating to the City not paying taxes and not reporting income on monies paid to members of the City Council.  (FAC ¶ 20.)  Thereafter, on June 15, 2007, Plaintiff reported the City and Defendant Scavuzzo to the IRS for not reporting income and not paying taxes.  (FAC ¶ 21.)

On September 26, 2007, Plaintiff alleges that she spoke out against illegal sewer rate increases by the City at a public workshop.  (FAC ¶ 22.)  Concurrently, from  May 2007 through October 2007, while acting as a private citizen, Plaintiff disclosed significant information and materials to a local newspaper regarding illegal annuities the City had granted to City Council members, improper tax reporting of income to Defendant Scavuzzo and Defendant Naffah, the recovery of monies from current and former City Council members, and the City's illegal increase in the sewer rates. (FAC ¶ 23.)

Plaintiff alleges that, on September 25, 2007, Defendants Burns and Naffah confronted her and wrongfully terminated employment, in breach of her employment contract and without notice or hearing and in violation of the Brown Act, Appendix A, section 8-220 of the City's Municipal Code, and other state laws.  (FAC ¶¶ 24, 36.)  She alleges that the City Council previously approved and/or later ratified her termination, in violation of state law and City ordinances, effectively causing the termination to be approved, executed, and/or ratified by the highest executive and legislative bodies of the City.  (FAC ¶ 26.)  Plaintiff further alleges that her termination was approved and/or ratified by the City and one or more of the individual Defendants, except Defendant Plack, in violation of California Government Code section 54957.  (FAC ¶ 27.)  She alleges that her public disclosures described above were known to Defendants and were a substantial cause in her termination and

Defendants' retaliation and harassment. (FAC ¶ 28.)

According to Plaintiff, after Defendants terminated her employment on September 25, 2007, Defendants (with the exception of Defendant Plack) continued their harassing and retaliatory conduct, including: (1) prohibiting Plaintiff from filing a ballot initiative in December 2007; and (2) denying her the right as a citizen of Crescent City to file for a refund of sewer rate overcharges on November 25, 2007. (FAC ¶¶ 29(a)(I)-(ii).) Additionally, Plaintiff alleges that in November 2007, Defendants (including Defendant Plack): (1) directed a City police officer to create a false police report finding Plaintiff at fault for an auto accident that occurred while she was Director of Finance, which the officer had initially reported as the other party's fault; (2) made a false claim and demand for reimbursement and indemnification to pay for the damages to the City vehicle that Plaintiff was driving at the time of the falsified collision, thereby treating Plaintiff differently from other City employees; and (3) "defamed Plaintiff to City employees and the general public as being unprofessional and committing illegal acts." (FAC. ¶ 29(b)(I)-(iv).)

Plaintiff also alleges that, during her employment, on her own behalf and on behalf of others, including the United States of America, and in furtherance of an action to be filed under 31 U.S.C. § 3730, she investigated claims that the City made and/or presented and other City acts and omissions that violated or potentially violated the False Claims Act, which, in addition to the conduct described above, included: illegal monies, unreported income; unreported and unpaid federal and state employment taxes; other benefits and allowances for members of the City Council; improper administration and implementation of "enterprise" funds; the operations and expenses of federal H.U.D. housing in the City and Del Norte County; and improper acts and omissions involving the construction and engineering of a new waste water treatment plant. (FAC ¶ 32.)

Additionally, Plaintiff avers that, during her employment, the City and its agents and employees directed her act in an unlawful fashion regarding matters of City finances and other public business. (FAC ¶ 39.) Plaintiff reported violations of state and federal law to her superiors, as well as to Defendant Burns, Defendant Naffah, the City Attorney, and the City Council. (FAC ¶ 40.) However, the City made and enforced rules that prevented Plaintiff from attempting to report

these violations. (FAC ¶ 41.) Thereafter, Defendants retaliated against her by terminating her employment, defaming and harassing her, and invading her privacy. (FAC ¶ 42.) In particular, Plaintiff alleges this conduct included the following acts: (1) on July 16, 2007, the City Council or Defendant Scavuzzo harassed her for purchasing furniture to accommodate her disability and to comply with ADA and FEHA requirements; (2) on September 18, 2007, Defendants had Plaintiff arrested as a result of her disability and attempted to influence the Del Norte County District Attorney to press charges; (3) making false and malicious and/or reckless statements about Plaintiff's job performance and professional abilities to the Crescent City newspaper, as well as false reasons for her termination; (4) on November 20, 2007, acting through the City Attorney, accusing and defaming her with charges of self-dealing, conflict of interest, malfeasance, and unprofessional and illegal conduct; (5) in October 2007, ordering City employees to shun her and not speak to her; and (6) in December 2007, impersonating Plaintiff and fraudulently using her name in an attempt to withdraw funds from a financial institution. (FAC ¶ 46(a)-(h).

Based on these allegations, Plaintiff asserts the following claims: (1) a 42 U.S.C. § 1983 claim for violation of the First and Fourteenth Amendments against all Defendants ("Claim One"); (2) violation of the False Claims Act ("Claim Two"); (3) breach of contract ("Claim Three"); (4) wrongful termination against the City ("Claim Four"); and (5) state law defamation, invasion of privacy, false light, intentional and negligent infliction of emotional distress against all Defendants ("Claim Five").

**B.     Defendants' Challenges**

In their Motion, Defendants seek dismissal of Plaintiff's FAC in its entirety. Toward this end, Defendants raise both defenses to Plaintiff's lawsuit, generally, and challenges to each of her claims. The Court will therefore address Defendants' general defenses first, and then turn to Defendants' claim-specific challenges.

/ / /

/ / /

/ / /

1. Immunity Defenses

   a. *Governmental Immunity*

Defendants first urge the Court to dismiss Plaintiff's FAC in its entirety because governmental immunity bars each of Plaintiff's claims against them. Specifically, Defendants advance three bases for their governmental immunity defense. First, Defendants contend that public agencies are absolutely immune from liability for misrepresentations that their employees make, whether or not such misrepresentation are negligent or intentional, and cite California Government Code section 818.8 and *Masters v. San Bernardino Employees Retirement Association*, 32 Cal. App. 4th 30 (1995), in support. (Mot. at 3.) Next, Defendants argue that public employees are immune from tort liability resulting from discretionary decisions that involve balancing of risks and advantages, and proffer California Government Code section 820.2, and three California state court decisions in support. Third, Defendants assert that under Government Code section 815.2(b), a governmental entity is generally immune when its employees are immune. Relying on these authorities, Defendants assert:

> Here, the Complaint alleges that City and the individual Defendants terminated Plaintiff with no notice after she complained of alleged illegal conduct by City and/or the individual Defendants. Decisions involving the termination of employment are protected by the three governmental immunities discussed above. The immunities absolutely bar Plaintiff from recovering damages on these claims, regardless of whether City or the individual Defendants abused their discretion in terminating Plaintiff, and regardless of whether misrepresentations were made to Plaintiff.

(Mot. at 4.)

Plaintiff, however, argues that state immunities have no effect on her federal claims under section 1983 and False Claim Act. (Opp. at 3.) In support, Plaintiff cites *Howlett v. Rose*, 496 U.S. 356 (1990), and *Felder v. Casey*, 487 U.S. 131 (1988). Without any discussion of these decisions, Plaintiff summarily asserts that, "[t]his conclusively defeats the State law 'immunity' argument asserted against the [First Amended Complaint], First and Second Claims." (Opp. at 3.) The Court has reviewed these decisions and find neither case to be on point. Particularly, *Howlett* dealt with whether a state law *sovereign immunity* defense was available when section 1983 claim was brought

in state court and the defense would otherwise not be available in federal court. *Felder*, on the other hand, addresses whether the Supremacy Clause preempted Wisconsin's notice of claim statute when a §1983 claim was filed in Wisconsin state court. Neither of these decisions stands for the broad proposition that Plaintiff advances and neither offer any language foreclosing Defendants' governmental immunity defense. The Court, therefore, must examine whether Defendants have sufficiently established that they are entitled to immunity under any of their proffered bases.

As indicated above, Defendants contend that they are entitled to governmental immunity under Government Code sections 818.8, 820.2, and 815.2(b). Turning first to section 818.8, this section provides: "A public entity is not liable for an injury caused by a misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." Cal. Gov't Code § 818.8. Although Defendants cite this section, they provide absolutely no explanation or analysis as to how it applies to Plaintiff's claims against them. Consequently, the Court finds that Defendants have failed to establish that they are entitled to immunity under section 818.8.

Next, Defendants contend that Plaintiff's claims premised on her termination of employment are barred under section 820.2. This section provides an exception to tort liability for public employees and provides:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

Cal. Gov't Code § 820.2. Under the plain language of the statue, the key inquiry is whether Defendants' termination of Plaintiff's employment was a discretionary act within the meaning of section 820.2. In their Motion, Defendants summarily assert that a decision to terminate employment constitutes a discretionary decision, and cite three California cases in support: *Caldwell v. Montoya*,. 10 Cal. 4th 972 (Cal. 1995), *Kemmerer v. Fresno County*, 200 Cal. App. 3d 1426, 1437-39 (1988), and *Shoemaker v. Myers*, 2 Cal. App. 4th 1407, 1423 (1992). (Mot. at 4.) The Court has reviewed these decisions, and finds that, while each of the cases involved the issue of governmental immunity in the context of

employment-related decisions, none of them hold that decisions to terminate employment, as a matter of law, are protected under section 820.2. Rather, the question of whether the public employee-defendants were entitled immunity turned on a detailed analysis of whether their conduct qualified as a discretionary act under section 820.2. *See Caldwell*, 10 Cal. 4th at 981 (citing *Johnson v. State of Cal.*, 69 Cal. 2d 782 (1968)); *Kemmerer*, 200 Cal. App. 3d at 1437-1438.[1]

In *Caldwell*, the California Supreme Court addressed the "narrow issue" of whether section 820.2 immunized elected school board members from common law and FEHA claims seeking damages against them personally for their successful votes to terminate the employment of the school district's superintendent. 10 Cal. 4th at 975-76. After considering the policy and legislative history of section 820.2, the Court analyzed the language of the statute, particularly the term "exercise of discretion" element. *Id*. at 979-982. The Court noted that in its previous decision in *Johnson*, it had provided "a 'workable definition' of immune discretionary acts" within the purview of section 820.2. *Id*. at 981. Specifically, the *Johnson* Court had explained that immunity under section 820.2 is reserved for those basic policy decision that have been expressly committed to coordinate branches of government and as to which judicial interference would be "unseemly." *See id.* at 981 (citing *Johnson*, 69 Cal.2d at 793). In contrast, the Court noted that there is no immunity under section 820.2 for lower-level or "ministerial" decisions that merely implement a basic policy already formulated. *Id. (citing Johnson*, 69 Cal. 2d at 796.)

Applying this standard, the Court in *Caldwell* then analyzed whether the school board's act of voting on whether to renew the superintendent's employment contract qualified as a discretionary act within the meaning of section 820.2. *Id*. at 982. The Court first noted that it had previously held that the school district trustees had immunity with respect to making community inquiries into a superintendent's fitness for continued employment. *Id*. It reasoned that, "[i]f a school district's governing board may thus freely *investigate* whether to terminate the employment of the district's

---

[1] The immunity discussion in *Shoemaker* relates to Government Code section 821.6, which applies to claims against a public employee arising from the initiation or prosecution of judicial or administrative proceedings. 2 Cal. App. 4th at 1423. Defendants fail to explain how *Shoemaker*'s discussion of immunity under section 821.6 applies in this matter.

superintendent, surely the board's final decision not to renew the superintendent's contract is entitled to similar protection." *Id*. The Court further noted that sections of the state Education Code, including the provision placing the superintendent's employment within the sole authority and discretion of the district's governing board, indicated that the decision about who should serve as superintendent satisfied the criteria set forth in *Johnson*. *Id.* The Court therefore concluded that the school board's collective determination whether to hire or fire a person as the its superintendent must be considered a basic policy decision, immune from civil damage actions that seek to hold individual board members liable for motives behind their votes. *Id*. at 983.

In *Kemmerer*, the plaintiff, a civil service employee, brought an action against the County of Fresno and two of his superiors after his superiors investigated him for misconduct and recommended that he be placed in a disciplinary proceeding, after which he was dismissed from County service. 200 Cal. App. 3d at 1429. In addressing whether the defendants were immune under section 820.2 against the plaintiff's tort claims, the court turned to the standard articulated in *Johnson* and proceeded to analyze whether the defendants' act of initiating disciplinary proceedings against the plaintiff was a policy decision involving the exercise of discretion. *Id*. at 1438-39. The court ultimately held that the defendants' act did amount to such a decision. *Id*. Because Plaintiff is not suing Defendants for initiation of disciplinary proceedings, *Kemmerer* is not directly on point. However, the court's approach to determining whether the defendants' conduct fell within the bounds of section 820.2 is instructive.

As *Caldwell* and *Kemmerer* make clear, and contrary to Defendants' assertion, there is no blanket immunity for governmental employees for employment-related decisions. Instead, the determination of whether a public employee's particular act is immune under section 820.2 requires careful consideration of the facts and circumstances surrounding the act. Here, aside from making the conclusory statement that the decision to terminate Plaintiff's employment is a discretionary act, Defendants have failed to proffer any explanation as to why their decision to terminate Plaintiff's employment meets the criteria set forth in *Johnson*. Consequently, Defendants have failed to demonstrate that they are entitled to dismissal of Plaintiff's claims on the basis of the governmental

immunity provided in section 820.2.[2]

Because the individual Defendants have failed to establish that they are entitled to immunity under 818.8 and 820.2, there is no basis, at this point, to find that Government Code section 815.2 protects the City from Plaintiff's claims. Furthermore, other than citing this code section, Defendants have presented no argument to the Court demonstrating section 815.2's application in this case.

In sum, the Court denies Defendants' request to dismiss Plaintiff's First Amended Complaint on the basis of governmental immunity.

        b.    *Legislative Immunity*

Next, Defendants Scavuzzo and Burns argue that they are absolutely immune from liability for actions taken in their respective legislative capacities as a City Council member and Mayor. It is well-established that, "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).[3] "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.*; *see Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003). Thus, the central question becomes whether the actions of Scavuzzo and Burns, "when stripped of all considerations of intent and motive," were legislative rather than administrative or executive. *Id.* (citing *Bogan*, 523 U.S. at 55). Generally, courts examine four factors in making this determination: (1) whether the act involves ad hoc decision-making, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation. *See Bechard v. Rappold*, 287 F.3d 827, 829 (9th Cir. 2002); *Kaahumanu*, 315 F.3d at 1220. As the parties asserting legislative immunity, Defendants Scavuzzo and Burns bear the burden of establishing that their conduct

---

[2] Nothing in this Order shall be construed as precluding Defendants from re-asserting their governmental immunity argument in the summary judgment context.

[3] The Supreme Court has recognized the legislative immunity is not limited to legislators at the federal and state level, but also reaches individuals acting in a legislative capacity at the regional or municipal level. *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 405 (1979).

giving rise to Plaintiff's claims were legislative in nature. *See Kaahumanu*, 315 F.3d at 1219*; Trevino v. Gates*, 23 F.3d 1480, 1482 (9th Cir. 1994).

Here, Defendants have failed to engage in this analysis. Rather, Defendants summarily conclude that "[a]ll of their actions in their official capacities are done in their legislative capacities." (Reply at 4.) Defendants have thus failed to meet their burden.[4] Accordingly, the Court denies Defendant Scavuzzo and Burn's request to dismiss Plaintiff's claims against them on the basis of legislative immunity.[5]

2. Claim One

In Claim One, Plaintiff asserts a § 1983 claim against Defendants for violation of the First and Fourteenth Amendments. Defendants move to dismiss Claim One on several grounds. The Court will address each argument, in turn.

First, Defendants argue that Plaintiff has failed to state sufficient facts to plead a § 1983 claim against the City because she cannot allege that a policy, practice, or custom deprived her of any constitutional rights, as required by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). (Mot. at 5-6.) According to Defendants, while Plaintiff has alleged that Defendants Burns and Naffah violated her rights by not conforming to the City's Municipal Code in firing her, simply failing to follow a valid law is not enough to establish liability against the City under

---

[4] Defendant Burns and Scavuzzo's reliance on *Almonte v. City of Long Beach*, 478 F.3d 100 (2nd Cir. 2007) does not change this conclusion or advance their argument in any way. First, *Almonte* is a Second Circuit decision, and Defendants have not indicated how it squares with law in this circuit with respect to legislative immunity. Second, and perhaps more significantly, Defendants overlook the fact that after addressing the issue on appeal, namely, whether legislative immunity protected city council members's secret meetings and agreements with non-legislators, the Second Circuit indicated that, upon remand, the district court had to evaluate whether the plaintiff's termination was an administrative act beyond the protections of legislative immunity. Citing the Supreme Court's *Bogan* decision as support, the Second Circuit explained that, "[a] personnel decision is administrative in nature if it is directed at a particular employee or employees, and is not part of a broader legislative policy." *Almonte*, 478 F.3d at 108 (citing *Bogan*, 523 U.S. at 55-56 (indicating that the "termination of a position, *unlike the hiring or firing of a particular employee*, may have prospective implications that reach well beyond the particular occupant of the office."). Thus, a full reading of *Almonte* merely leads Defendants back to their burden of having to establish that the acts where legislative in nature pursuant to the factors set forth above.

[5]This ruling does not preclude Defendants from re-asserting their argument at summary judgment.

1 § 1983. (Opp. at 6.) Plaintiff responds that she has pled conduct by the City's top decision makers,
2 namely, Defendants Burns, Naffah, and Plack, which is sufficient to hold the City liable for the alleged
3 violations. Although Plaintiff's argument is sparse and lacks any significant analysis or discussion of
4 Plaintiff's proffered legal authorities in support of her position, the Court agrees with Plaintiff that her
5 allegations are sufficient.

6 In *Monell*, the Supreme Court held that a municipality can be held liable under § 1983 only for
7 injuries inflicted pursuant to a municipal policy or custom which caused the deprivations of a plaintiff's
8 constitutional rights. *Id*. at 694. Toward this end, the Ninth Circuit has recognized that a section 1983
9 plaintiff may establish local government liability based on official policy or custom only by: (1) alleging
10 and showing that a city or county employee committed the alleged constitutional violation under a
11 formal governmental policy or longstanding practice or custom that is the customary operating
12 procedure of the local government entity; (2) establishing that the individual who committed the
13 constitutional tort was an official with final policy-making authority and that the challenged action itself
14 was an act of official governmental policy which was the result of a deliberate choice made among
15 various alternatives; or (3) proving that an official with final policy-making authority either delegated
16 policy-making authority to a subordinate or ratified a subordinate's unconstitutional decision or action
17 and the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir.1992).

18 Here, Plaintiff has alleged that the City's Mayor (Defendant Burns) and its City Manager
19 (Defendant Naffah) wrongfully terminated her employment and that her termination was "previously
20 approved and/or later ratified by the entire City's City Council, [] which by approving and/or ratifying
21 [Plaintiff's] termination, caused the termination to be approved and/or executed and/or ratified by the
22 highest executive and legislative bodies of the City." (FAC ¶¶ 24, 26.) Plaintiff also alleges that her
23 termination "was approved and/or ratified by the City and one or more of the individual defendants[.]"
24 (FAC ¶ 27.) Thus, Plaintiff has alleged that the individual Defendants, which include the City's Mayor
25 and City Manager, approved the decision to terminate her employment, and that the City's legislative
26 body - the City Council - ratified that decision. At this stage, Plaintiff's allegations are sufficient to
27 plead the policy, practice, or custom element of a § 1983 claim. *See also Pembaur v. City of Cincinnati*,

475 U.S. 469, 478 (1986) (a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body-whether or not that body had taken similar action in the past or intended to do so in the future-because even a single decision by such a body unquestionably constitutes an act of official government policy).

Second, Defendants argue that Plaintiff cannot maintain a §1983 claim against the individual Defendants in their official capacities. (Mot. at 6-7.) In her Opposition, Plaintiff states that she "does not allege official capacity violations anywhere in the FAC." (Opp. at 6.) Thus, this issue is moot.

Third, Defendants argue that even if Plaintiff has pled an actionable §1983 claim against the individual Defendants in their individual capacities, they are protected by qualified immunity. (Mot. at 7-8.) Specifically, Defendants advance that Defendants Burns and Naffah are entitled to qualified immunity for their decision to terminate Plaintiff because "they could reasonably believe that there were legitimate reasons to terminate Plaintiff's employment." (Mot. at 8.) They further contend that "[h]ere, Defendants Naffah and Burns terminated Plaintiff on the understanding that they could do legally so [sic] with no notice since Plaintiff was a probationary employee." (*Id.*) Defendants thus conclude that, because Defendants Burns and Naffah's termination of Plaintiff pertains to their reasonable exercise of discretion, they are entitled to qualified immunity and the Court must dismiss Plaintiff's claim against them.

Qualified immunity protects section 1983 defendants from liability for civil damages so long as their conduct does not violate a clearly established constitutional or statutory right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 199-200 (2001). However, because facts necessary to establish an affirmative defense generally must be shown by matter outside the complaint, a qualified immunity defense is generally not amenable to a Rule 12(b)(6) motion. *See Morley v. Walker,* 175 F.3d 756, 761 (9th Cir.1999) (holding that, in light of the fact that all allegations in the complaint must be regarded as true on a motion to dismiss, "dismissal [on qualified immunity grounds] for failure to state a claim under 12(b)(6) is inappropriate"). The court

is usually "not equipped at this stage to determine whether qualified immunity will ultimately protect [the defendant]. Those issues must be resolved at summary judgment or at trial." *Id.; see also Groten v. California,* 251 F.3d 844, 851 (9th Cir.2001) ("Rule 12(b)(6) dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." ) (citing *Jensen v. City of Oxford,* 145 F.3d 1078, 1085 (9th Cir.1998)).

As indicated above, Defendants argue that they are entitled to qualified immunity because Defendants Burns and Naffah were acting within their discretion when they terminated Plaintiff's employment and they reasonably believed that there were legitimate reasons for the decision. Defendants' argument thus relies wholly on facts outside the scope of Plaintiff's FAC. The Court is not authorized to consider such facts at the 12(b)(6) stage. *See Morely*, 175 F.3d at 761. The Court will therefore deny Defendants' request to dismiss Plaintiff's § 1983 claim based on a qualified immunity defense without prejudice to Defendants re-asserting their argument in a summary judgment motion.

Fourth, Defendants assert that Plaintiff's § 1983 claim against the individual Defendants in their individual capacities fails because there are no allegations that they acted under color of law. (Mot. at 9.) In response, Plaintiff proffers that "[p]aragraphs 8 through 21 of the FAC flatly contradict defendants' statement that plaintiff has pled 'absolutely no factual allegations that any of the individual defendants . . . acted under the color of State law.'" (Opp. at 7.) Reviewing the FAC, in paragraph 16, Plaintiff alleges: "Defendants . . . to the extent they engaged in any acts or omissions alleged herein, and unless otherwise indicated by this complaint, **at all times, engaged in such acts and/or omissions under color of state law**." (Emphasis added.) At the pleading stage, this allegation is sufficient.

Finally, Defendants contend that Plaintiff has failed to state sufficient facts to state a First Amendment violation. (Mot. at 9-10.) Defendants acknowledge that Plaintiff has alleged that Defendants prohibited her from filing a ballot initiative in December 2007. However, without citation to any authority, Defendants assert that, because Plaintiff had already been terminated the this time of the alleged act, she must allege facts supporting a traditional First Amendment violation claim. (*Id.*) Defendants further contend that Plaintiff has "fail[ed] to allege how their actions intentionally deprived

her of her [F]irst [A]mendment rights," and that she "fail[ed] to allege any actual facts to establish that her right to free speech was in some way impeded by the Defendants." (*Id*. at 10.) In her Opposition, Plaintiff lists, without explanation, paragraphs 20-29 of her FAC and cites three decisions without any explanation or analysis of how they respond to Defendants' challenge. Examining the proffered paragraphs, the Court finds that Plaintiff has adequately alleged conduct by Defendants infringing on her rights under the Fist Amendment. Nothing more is required by Rule 8.[6]

In sum, because Defendants have not raised any basis justifying dismissal of Claim One of Plaintiff's FAC at this stage, the Court **DENIES** Defendants' Motion with respect to Claim One.

3. <u>Claim Two</u>

In Claim Two, Plaintiff alleges that the City retaliated against her in violation of the federal False Claims Act, 31 U.S.C. §3730(h). Defendants move to dismiss this claim on several grounds.

Defendants first contend that this Court lacks subject matter jurisdiction over the claim because Plaintiff failed to follow *qui tam* procedures required under 31 U.S.C. §3730. Plaintiff, however, asserts that, because she is bringing her claim pursuant to section 3730(h), the *qui tam* procedures are inapplicable. The Court agrees with Plaintiff.

Section 3730(h) provides:

> (h) Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

---

[6]If Defendants are attempting to dismiss Plaintiff's section 1983 claim premised on First Amendment violations on the ground that none of the conduct alleged in the FAC amounts to an actual First Amendment violation, Defendants must identify the specific allegations they claim are insufficient as a matter of law and provide sufficient legal authority in support.

Although there does not appear to be any Ninth Circuit authority addressing whether a *qui tam* action under the FCA is a necessary prerequisite to a plaintiff stating a claim under section 3730(h), numerous other courts have held that there is no such requirement. *See Clemes v. Del Norte County Unified. Sch. Dist.*, 843 F. Supp. 583, 595-96 (N.D. Cal. 1994) (denying motion to dismiss section 3730(h) because the plaintiff had not filed a *qui tam* action, and noting that, "[t]here is certainly no requirement in the statute itself that a plaintiff have exhausted all of the requirements of section 3730(b) or have actually filed a *qui tam* suit."); *United States ex rel. Kent v. Aiello*, 836 F. Supp. 720, 724 (E.D. Cal. 1993); *United States ex rel. Yesudian v. Howard Univ.,* 153 F.3d 731, 739-40 (D.C. Cir. 2005); *Hoyte v. Am. Nat'l Red Cross*, 439 F. Supp.2d 38, 42 (D.D.C. 2006) ("To show that she was engaged in protected activity, *i.e.,* acts "in furtherance of" an FCA action, the employee does *not* need to have initiated a *qui tam* suit at the time of such acts, or even have contemplated initiating such a suit."); *Neal v. Honeywell, Inc.* 826 F. Supp. 266 (N.D. Ill. 1993); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996). The Court agrees with the reasoning set forth in these decisions. Accordingly, the Court finds that Plaintiff was not required to file a *qui tam* action before asserting her claim under section 3730(h) and denies Defendants' request to dismiss the claim on that basis.[7]

Next, Defendants assert that the Court must dismiss the individual Defendants from Plaintiff's False Claims Act claim because liability does not attach to them as individuals or in their individual capacities. (Mot. at 11.) Plaintiff does not address this challenge in the section of her Opposition brief relating to the False Claims Act. However, as pled in the First Amended Complaint, Plaintiff's Second Claim is asserted only against the City. (FAC at 6, ll. 20-21.) Further, at page 3 of her Opposition brief, Plaintiff clarifies that her Second Claim is asserted only against her employer, not the individual Defendants. Accordingly, Defendants' argument on this issue is misplaced.

Third, Defendants contend that Plaintiff has failed to plead necessary elements of her section

---

[7] Plaintiff cites *Mendiondo v. Centinela Hospital Medical Center*, 521 F.3d 1098 (9th Cir. 2008), as support for her proposition that "[c]ourts have repeatedly ruled that a false claim action under section 3730(h) is procedurally and substantively different from a '[q]ui [t]am' action[] under Section 3730(a)-(f)." (Opp. at 7.) As indicated, because the Court finds the authorities set forth above sufficiently address Defendants' argument regarding whether a *qui tam* action is a prerequisite to a 3730(h) claim, the Court finds it unnecessary to address the parties' interpretations of *Mendiondo*.

3730(h) claim. "There are three elements the plaintiff must prove in any § 3730(h) claim: 1) the employee must have been engaging in conduct protected under the Act; 2) the employer must have known that the employee was engaging in such conduct; and 3) the employer must have discriminated against the employee because of her protected conduct." *Moore v. Cal. Inst. of Tech Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002). Defendants argue that Plaintiff has failed to plead that Defendants had any knowledge that she was engaged in conduct protected under the False Claims Act or that she was terminated and/or retaliated against for engaging in that protected conduct. (Opp. at 12, Reply at 12.) In response, Plaintiff maintains that she has adequately pled her claim, and refers the Court to paragraphs 32 and 33 of her FAC.

Reviewing Plaintiff's FAC, with respect to Defendants' challenge that Plaintiff failed to plead that she was retaliated against for engaging in protected conduct, the Court finds that the allegations in paragraph 33, if taken as true and assuming that they include the specific facts necessary to support them, is sufficient on this element. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). With respect to Defendants' challenge to the sufficiency of Plaintiff's allegations of her employer's knowledge, at no point in either paragraph 32 or 33 does Plaintiff allege that the City was aware that she was engaging in protected conduct. However, in paragraph 28, Plaintiff alleges, in part, that her "public disclosures as a private citizen set forth in paragraphs 19 to 23 above were, at all relevant times, known to all defendants and were a substantial cause in her unlawful termination[.]" As part of her Second Claim, Plaintiff re-alleges and incorporates all preceding paragraphs of her FAC - including paragraph 28. Thus, Plaintiff's allegation that Defendants knew about her disclosures was effectively alleged as part of her False Claim Act allegations in Claim Two. Interestingly, Plaintiff does proffer paragraph 28 in response to Defendants' challenge. The Court is unsure whether to infer from this omission that Plaintiff overlooked this allegation in her pleading, or that she does not believe that it pertains to her claim under § 3730(h). Because employer awareness is an essential element of a § 3730(h) claim, and neither of the two paragraphs that Plaintiff has specifically cited in support of her § 3730(h) claim contain an allegation of Defendants' knowledge, the Court is compelled to find that Plaintiff has failed to adequately plead a necessary element of her claim. Consequently, the Court will

1 **GRANT** Defendants' request to dismiss Plaintiff's 3730(h) claim. However, because it is possible that
2 Plaintiff may be able to plead this necessary element, dismissal of this claim is without prejudice.

3         4.         <u>Claims Three through Five</u>

4 In Claim Three, Plaintiff asserts a breach of contract claim against the City. In her Claim Four,
5 Plaintiff asserts a wrongful termination claim pursuant to California statutory and common law. In
6 Claim Five, Plaintiff asserts claims against all Defendants for state law defamation, invasion of privacy,
7 false light, intentional infliction of emotional distress, and negligent infliction of emotion distress.
8 Defendants seek dismissal of each of these claims, as pled in the FAC, on various grounds. However,
9 as both Plaintiff and Defendants acknowledge in their briefs, two days after Plaintiff filed her FAC, the
10 California Supreme Court issued its decision in *Miklosy v. Regents of the University of California*, 44
11 Cal. 4th 876 (Cal. 2008). Both Plaintiff and Defendants note that *Miklosy* directly affects certain
12 components of Claims Four and Five.[8]

13 In her Opposition brief, Plaintiff seeks to make substantial amendments to her First Amended
14 Complaint. Specifically, Plaintiff indicates that she voluntarily dismisses her Third Claim for breach
15 of contract and requests leave to amend her Fourth and Fifth Claims to comply with *Miklosy*. Normally,
16 the proper vehicle to seek leave to amend a pleading is a motion pursuant to Federal Rule of Civil
17 Procedure 15. As is obvious in the parties' briefs, Plaintiff's attempt to re-cast her claims in her
18 Opposition has placed Defendants in a position of not knowing exactly which claims are in play, and
19 of having to address Plaintiff's purported amended claims in their Reply. Further, it is clear that *Miklosy*
20 limits, if not bars, several of Plaintiff's claims as they are currently pled and moots several of the
21 arguments Defendants have raised in their Motion. Accordingly, in the interest of efficiency, and to
22 allow Defendants to have a full and fair opportunity to address Plaintiff's claims against them, the Court

---

[8] In that decision, the Court held that California Government Code section 815 bars *Tameny* actions against public entities, such as the University of California. 44 Cal. 4th at 899-900. The Court further held that a common law *Tameny* cause of action for wrongful termination in violation of public policy lies only against an employer, not against individual employees *Id*. at 902. With respect to the plaintiffs' intentional infliction of emotional distress cause of action based, premised on alleged outrageous conduct occurring during the plaintiffs' employment, the Court held that the emotional distress claims were barred by the workers' compensation exclusive remedy provisions. *Id*. at 903.

United States District Court
For the Northern District of California

will **DENY** Defendants' Motion to Dismiss Claims Four and Five without prejudice. Because Plaintiff has indicated that she voluntarily withdraws Claim Three for breach of Contract, the Court **DENIES AS MOOT** Defendants' Motion as to this claim. Further, the Court **GRANTS** Plaintiff's request for leave to amend her FAC consistent with the amendments she has indicated in her Opposition.[9]

## V.  CONCLUSION

Based on the foregoing analysis, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss (Dkt. #33), as follows:

The Court **GRANTS** Defendants' Motion with respect to Claim Two.

The Court **DENIES AS MOOT** Defendants' Motion with respect to Claim Three.

The Court **DENIES WITHOUT PREJUDICE** Defendants' Motion as to Claims One, Four, and Five.

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to file a Second Amended Complaint is **GRANTED**. Plaintiff shall file and serve her Second Amended Complaint by March 24, 2009. Defendants shall file any motion or responsive pleading by April 16, 2009.

**IT IS SO ORDERED.**

Dated: March 10, 2009

MARIA ELENA JAMES
United States Magistrate Judge

---

[9] The Court cautions Plaintiff that this leave is limited to cleaning up and clarifying her current claims - it is not authorization to assert new claims.